UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              v.

STEVE MARTIN,

                              Defendant.

**Hon. Hugh B. Scott**

07CR4E

**Order**

Before the Court is defendant's motion for discovery, to suppress a firearm and his statements, and for a suppression hearing (among other relief sought) (Docket No. 8[1]).  This case was referred to the undersigned for pretrial matters on February 7, 2007 (Docket No. 7).

**BACKGROUND**

Defendant was indicted on January 9, 2007, for possession of a firearm (a Rossi .38 caliber revolver) by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Docket No. 1, Indictment). He entered a not guilty plea on January 16, 2007, and a Scheduling Order was entered for motions to be argued initially on April 12, 2007 (Docket No. 3), but that was rescheduled to May 2, 2007 (Docket No. 10).

Most of the facts appear not to be in dispute.  Buffalo Police Officer Robert Salamone observed defendant, on January 19, 2006, engage in what appeared to be a narcotics transaction. Salamone then approached defendant and alleges that he observed the butt of a revolver

---

[1]In support of his motion, defendant filed his attorney's affirmation with exhibit, Docket No. 8.  In opposition, the Government filed its Response, Docket No. 13.

protruding from the right side of defendant's waistband. (See Docket No. 8, Def. Atty. Affirm. ¶ 7, Ex. A, Thomas Rodriguez Aff. ¶ 3.) At this point, defendant then fled, with Salamone chasing him, through backyards on Walden Avenue, Buffalo, New York. Defendant allegedly tossed something near 365 Walden Avenue and was apprehended on 357 Walden Avenue. (Id., Ex. A., Rodriguez Aff. ¶ 3.) Salamone and Officer Mark Alberti retraced the pursuit route and found a Rossi revolver on the front porch of 365 Walden Avenue (id.).

Defendant contends that the officers lacked probable cause to stop and seize him (Docket No. 8, Def. Atty. Affirm. ¶ 9), and argued in oral argument that he needs to examine the officer to determine his perspective and whether he in fact saw a gun butt on defendant's person. Defendant claims that he did nothing suspicious, had no charges pending against him, did nothing wrong, and thus there was no probable cause for the police officers to approach him (id. ¶ 14). He noted in oral argument that there was no reason for officers to approach him and the revolver at issue was not found on defendant's person.

Defendant seeks to suppress the revolver (id. ¶¶ 4, 8-16) and his statements, because he was never given Miranda warnings (id. ¶¶ 4, 17), and moves for an evidentiary hearing on these two points (id. ¶ 19). He also seeks disclosure of Federal Rules of Evidence 404(b), 608, and 609 material (id. ¶¶ 4, 20-27); disclosure of Jencks Act material (id. ¶¶ 4, 28-30), Brady material (id. ¶¶ 4, 31-33); and discovery and inspection (id. ¶¶ 4, 34-53). He also seeks the right to make further motions (id. ¶¶ 54, 4).

The Government responded that the actions of the police officers in approaching defendant were appropriate and that the officers had probable cause (from observing the gun butt in the waistband of defendant's clothing) to stop defendant and defendant's motion to suppress

the firearm should be denied (Docket No. 13, Gov't Response at 1-2).  The Government next argues that defendant lacks standing to contest the seizure of the revolver, found on the porch, after he abandoned it (id. at 2).  As for defendant's statements, the Government reports that it turned over the New York CPL 710.30 form and that form indicated that defendant did not make any statement to the police and the Government has not indicated that it intended to use his statements, thus the Government deems the motion to suppress his statements as moot (id. at 3).

The Government's responses to the discovery motions will be addressed in the discussion below at each particular item requested.  The Government cross-moved for reciprocal discovery from defendant (Docket No. 13, Gov't Response at 8).

At oral argument on May 2, 2007, the parties conceded that most of the discovery issues were resolved.

**DISCUSSION**

I.     Suppression Hearing

While defendant outlines the Government's basis for probable cause, he argues that he should have a hearing to obtain the officer's testimony on what he observed leading to the pursuit of defendant and ultimately finding the revolver.  Also, defendant's motion raises the question whether <u>Miranda</u> warnings were given to defendant upon his arrest.  Despite the Government's argument that no statements were made at the time of the arrest, that issue needs to be fleshed out as well.

Therefore, a suppression hearing will be held on **Wednesday, May 16, 2007, at 1:30 pm**, before the undersigned.  Defendant currently is in state custody; the Government, therefore, shall make arrangements for defendant's presence for this hearing.

II.     Rule 404, 608 and 609 Evidence

Defendant next requests disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b). He also requests disclosure of all evidence of prior bad acts that the Government intends to use for impeachment of the defendant should he testify at trial, pursuant to Rules 608(b) and 609(a). (Docket No. 8, Def. Atty. Affirm. ¶¶ 20-24.) He also seeks evidence of prior acts or convictions the Government intends to rely upon as part of his general discovery request (id. ¶ 40).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." The Government has represented that the Government has not yet found such material, but it intends to provide all such material to defendant pursuant to the Scheduling Order of the District Court (Docket No. 13, Gov't Response at 3-4). This is sufficient in this case.

As for Rules 608 and 609 material, the Government states that it has no Rule 608 information. However, the Government intends to impeach defendant with his criminal history, parole and probation history (if any) if he testifies. (Id. at 4.) If the Government learns of other Rule 609 material, it will promptly notify defendant of it (id.). Since the admissibility of any such evidence is best determined by the trial judge for this case, the Government's present response is also sufficient.

III.    Jencks Act Material

Defendant seeks immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500 (Docket No. 8, Def. Atty. Aff. ¶ 28). The Jencks Act governs the disclosure of

information and statements relating to the Government's witnesses. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial. In this case, the Government has agreed to disclose this information in advance of a suppression hearing (Docket No. 13, Gov't Response at 4-5). This is early enough and should suffice.

IV.     <u>Brady</u> Material

Defendant next has requested that the Government disclose all materials potentially favorable to him, including information to be used for the impeachment of the Government's witnesses, as required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny (Docket No. 8, Def. Atty. Affirm. ¶¶ 31-32). <u>Brady</u> material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness." <u>United States v. Kiszewski</u>, 877 F.2d 210 (2d Cir. 1989).

The Government's written response is, that it is not now in possession of "exculpatory" <u>Brady</u> material, but acknowledges its continuing duty to produce such material (Docket No. 13, Gov't Response at 5).

This Court believes that fundamental fairness and the constitutional due process requirements which underlie <u>Brady</u> mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined <u>Brady</u>/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second

Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided." United States v. Percevault, 490 F.2d 126 (2d Cir. 1974); United States v. Green, 144 F.R.D. 631 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The instant case does not appear to be unusually complex.  Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for defendant to have a fair opportunity to utilize the information at trial) is sufficient in this case.

V.   General Discovery

Finally, defendant seeks other discovery from the Government.  In response, the Government contends that it fulfilled its obligations under Rule 16 regarding discoverable material and will continue to meet those obligations (Docket No. 13, Gov't Response at 5).

   A.   Statements

Pursuant to Rule 16(a)(1)(A), defendant seeks any written or oral statements made by him which are within the possession custody or control of the Government, or which through the exercise of due diligence, may become known to the Government.

Rule 16(a)(1)(A) provides that, upon request, the Government must disclose any written or recorded statements made by a defendant, before or after arrest, in response to interrogation by any person known to the defendant to be a Government agent; and recorded testimony of the

defendant before the grand jury which relates to the offense charged.[2]  Failure of the Government to disclose a defendant's statements to a Government agent may rise to the level of constitutional due process violation. <u>Clewis v. Texas</u>, 386 U.S. 707 (1967).

In this case, the Government has represented that it believes that it has already disclosed all statements made by defendant.  To the extent that the Government has not yet done so, pursuant to Rule 16 (a)(1)(A) the Government is hereby directed to produce all such statements made by Defendant.

    B.    Document Production

Pursuant to Rule 16(a)(1)(C), defendant also seeks production of various documents, books, records, photographs, and other tangible objects in the possession, custody or control of the Government.  Defendant identifies several specific categories of items which they seek to be produced.

    C.    Test Results

Defendant next seeks results of reports of physical or mental examinations and scientific tests (Docket No. 8, Def. Atty. Affirm. ¶ 38).  The Government reports that the revolver was fingerprint tested and defense counsel was informed of the preliminary results of that testing. The Government intends to inform defense counsel of the results of any other tests as they become available (Docket No. 13, Gov't Response at 6-7).  The Government also made the firearm available for defense inspection and conducted forensic tests on the firearm and forwarded the initial results to defendant (<u>id.</u> at 7).  The Government intends to call Michael

---

[2]Rule 16 (a)(2) expressly provides that subdivision (a)(1) does not authorize disclosure of statements made by Government witnesses or prospective Government witnesses except as provided in 18 U.S.C. § 3500 (the Jencks Act).

Dujanovich of the Erie County Police Services Forensic Laboratory as an expert witness whether this revolver meets the federal definition of a "firearm" under 18 U.S.C. § 921(a)(3) and Alcohol, Tobacco & Firearms Special Agent Francis Christiano as an expert to testify as to the revolver's point of manufacture and whether it traveled in or affected interstate commerce (id.).

    D.    Evidence of Entrapment

Defendant seeks evidence of entrapment (Docket No. 8, Def. Atty. Affirm. ¶ 39).

    E.    Evidence About Government Witnesses

Similar to his Jencks Act request, defendant also seeks evidence the Government possesses regarding his prior felony convictions or convictions for moral turpitude of any witnesses the Government intends to call (Docket No. 8, Def. Atty. Affirm. ¶ 41) as well as evidence of prior misconduct or bad acts of those witnesses (id. ¶ 42). He also seeks the criminal records of all informants the Government intends to call as witnesses (id. ¶ 43). He also wants to learn about any prosecutions or civil litigation between these witnesses and the Government (id. ¶ 46). He seeks production of Government files for these witnesses (id. ¶ 47) and their prior testimony in other cases relating to defendant (id. ¶ 48). The Government's Jencks Act disclosure should cover these particular requests.

    F.    Informants

Defendants wants to know the name and any consideration given to informants in this case (Docket No. 8, Def. Atty. Affirm. ¶¶ 45, 44). He seeks the pre-trial disclosure of the identity of any informants in this case. The Government is not required to furnish the identities of informants unless it is essential to the defense. Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988).

8

Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial. United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921 (1990).

Defendant has not established that the pre-trial disclosure of the identities of any informants is essential to his defense. This request is denied.

Defendant next seeks production of any transcripts or video presentations of him or other unindicted co-conspirators (Docket No. 8, Def. Atty. Affirm. ¶ 50) and transcripts and recordings of telephonic conversations between defendant and co-conspirators (id. ¶ 51). The Government has not indicated the existence of such evidence and the allegations do not appear to reveal the existence of such evidence. Nevertheless, if such evidence exists, it is discoverable and should be disclosed.

## CONCLUSION

For the reasons stated above, defendant's motion (Docket No. 8) for discovery relief is **granted in part, denied in part** as described within this Order. The Government's cross-motion for reciprocal discovery (see Docket No. 13, Gov't Response at 8), is also **granted**. Defendant's motion for a suppression hearing is **granted**; that hearing will be held on **Wednesday, May 16, 2007, at 1:30 pm**, before the undersigned.

So Ordered.

/s/ Hugh B. Scott
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        May 3, 2007